**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ERIC DIVALERIO,<br><br>           Plaintiff,<br><br>     v.<br><br>BEST CARE LABORATORY, LLC,<br>RAJEEV TALWAR, and TARA<br>PENDERGRAFT,<br><br>           Defendants. | Civil Action No. 20-17268 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff Eric DiValerio ("Plaintiff") filed this suit against defendants Best Care Laboratory, LLC, ("BCL" or the "Company"), Rajeev Talwar ("Talwar"), and Tara Pendergraft ("Pendergraft") (collectively, "Defendants"), alleging breach of three agreements between the parties, namely, the Membership Purchase Agreement ("MPA"), the Marketing and Sales Contractor Agreement ("Independent Contractor Agreement"), and a Promissory Note ("Note"), which all relate to Plaintiff's purchase of BCL ownership shares in exchange for various consideration.  Plaintiff also asserts violations of the New Jersey Wage Payment Law, N.J.S.A 34:11-4.1, *et. seq*., and the New Jersey Sales Representatives' Rights Act, N.J.S.A. 2A:61A.

Presently before the Court are two separate motions: (1) BCL's and Pendergraft's joint motion to compel arbitration, or in the alternative, to dismiss the Amended Complaint, ECF No. 14; and (2) Talwar's motion to compel arbitration and to stay proceedings.  ECF No. 15. Defendants' motions to compel arbitration are based on an arbitration clause in the MPA, which Defendants argue applies to the remaining two contracts through incorporation.  For the reasons

1

set forth below, Defendants' motions to compel arbitration are **GRANTED in part** and **DENIED in part** as follows: Plaintiff's breach of contract claims (Counts I, II, and II) shall proceed to arbitration.  Plaintiff's statutory claims (Counts IV and V) are not arbitrable; however, both parties are directed to submit supplemental briefing, in accordance with the directions *infra*, on the issue of whether the statutory claims must be brought in state court, or may proceed here, consistent with the venue provision in the Independent Contractor Agreement.  Because there is an open question as to whether Counts IV and V are properly before this Court, Defendant Pendergraft and BCL's motion to dismiss is denied without prejudice and may be relisted if these claims remain in this Court.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are derived from Plaintiff's Amended Complaint ("AC") and assumed true for the purposes of this motion.

Defendant BCL is a registered Limited Liability Company in New Jersey, engaged in the business of blood testing.[1]  ECF No. 11 ¶¶6, 7.  Defendant Talwar is the Chief Executive Officer of BCL, *Id.* ¶8, and Defendant Pendergraft is the President of BCL.  *Id.* ¶9.  Both Talwar and Pendergraft are managing Members of the Company and each owns 30% of the Company.  *Id.* ¶¶8, 9.

On or about February 8, 2018, Plaintiff entered into three agreements with Defendants: the MPA, the Independent Contractor Agreement, and the Note.  *Id.* ¶¶23, 29-30; Exs. A, B, C.  All three agreements were signed by Plaintiff on the same day; Pendergraft signed the MPA and

---

[1] It is unclear based on the Complaint what type of business Plaintiff was expected to bring to BCL, but we can glean from the Exhibits that the clients are various medical facilities and/or doctors that would send blood tests to BCL.

Independent Contractor Agreement, and Talwar signed the MPA and Note.  *Id*. Exs. A, B, C. Plaintiff, Pendergraft, and Talwar also initialed the bottom of every page of the MPA.  *Id*. Ex. A.

Pursuant to the MPA, Defendants agreed to sell a 40% interest in BCL to Plaintiff, and in exchange, Plaintiff agreed to two primary terms.  *Id*. ¶24, 28.  First, Plaintiff would loan BCL $300,000.  *Id*. ¶28.  According to the MPA, this loan must be "evidenced by a Note executed by [BCL]" and be "attached" to the MPA as an exhibit.  *Id*. Exs. A, C.  In that connection, BCL executed and delivered the Note, which promised to pay the loan's principal with a 4% interest rate per annum that would increase to 12% upon default.  *Id*. ¶29; Exs. A, C.  Second, Plaintiff agreed to direct his book of business exclusively to BCL, for which Plaintiff would earn commissions on his sales by the Independent Contractor Agreement.  *Id*. ¶28, 37; Exs. A, B.  Under the MPA, Plaintiff agreed that he would bring in an average of $300,000 in gross sales per month over the first 12 months of the Agreement.  *Id*. ¶28, 31; Ex. A.  If Plaintiff failed to reach that goal, the MPA provided BCL "the option of refunding the [Plaintiff's] $300,000 loan and Terminating the [MPA]."  *Id*. Ex. A.  The MPA also states that "[n]othing contained herein will affect the commissions earned by the [Plaintiff] pursuant to the Independent Contractor Agreement[.]"  *Id*. Indeed, the MPA specifically provides that the "Independent Contractor Agreement is annexed hereto as exhibit D and incorporated herein by reference."  *Id*.

The MPA contained an Arbitration Clause, which provides:

10) **ARBITRATION.** Any dispute, controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration in the city in which the principal place of business of the Company is then located, pursuant to the commercial arbitration rules then in effect of the American Arbitration Association (or at any other time or place under any other form of arbitration mutually acceptable to the parties involved). Any award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered in a court of competent jurisdiction. The expenses of the arbitration shall be borne equally by the parties to the arbitration, provided that each party shall pay for and

3

> bear the cost of its own experts, evidence and attorneys' fees, except that in the discretion of the arbitrator any award may include the attorney's fees of a party if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy or claim to be submitted to arbitration as a dilatory tactic or in bad faith.

*Id*. In addition, the MPA lists specific instances that would cause BCL or Plaintiff to default under the Agreement, one of which includes violations of the Independent Contractor Agreement. *Id*. ¶39. Upon default by BCL, the MPA entitles Plaintiff to a "buy-out of his equitable interest in BCL, immediate repayment of his loan to [BCL], retention of all his customers and clients, and reimbursement of all costs associated with [Plaintiff] moving his customers and clients to BCL." *Id*. ¶40

On or about November 30, 2018, Plaintiff, through his then-counsel, notified Defendants that they were in default of the MPA. *Id*. ¶44. Plaintiff claimed, among other things, that Defendants failed to pay commissions according to the Independent Contractor Agreement, attempted to unilaterally alter the terms of the Independent Contractor Agreement without Plaintiff's consent, failed to make interest payments due on the Note, and refused to service Plaintiff's most profitable account, which damaged Plaintiff's gross sales targets and income under the Independent Contractor Agreement's terms. *Id*. ¶42. Plaintiff alleges that upon notification of the breaches, Defendants refused to buy-out Plaintiff's equitable interest in BCL, failed to repay Plaintiff's loan and interest, and failed to return Plaintiff's clients. *Id*. ¶45. Plaintiff alleges that, as a result, he has suffered financial losses, which include, *inter alia*, lost wages, loss of business opportunity, lost profits, loss of the benefits of his contracts with Defendants, and is entitled to attorneys' fees as a result of Defendants' actions and inactions. *Id*. ¶49.

Plaintiff filed his Complaint in this Court on November 25, 2020. ECF No. 1. Following Pendergraft and BCL's initial Motion to Compel Arbitration or in the Alternative, Motion to

Dismiss for Failure to State a Claim, Plaintiff filed an Amended Complaint on February 18, 2021. ECF Nos. 10, 11.  On March 18, 2021, Pendergraft and BCL jointly renewed their motion, but now directed at the Amended Complaint.  ECF No. 14.  That same day, Talwar also filed a Motion to Compel Arbitration. ECF No. 15.

## II.   LEGAL STANDARD

The FAA establishes "a strong federal policy in favor of the resolution of disputes through arbitration." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009)). Congress passed the FAA specifically "'to reverse the longstanding judicial hostility to arbitration agreements . . ., and to place arbitration agreements upon the same footing as other contracts.'" *Teamsters Local 177 v. United Parcel Service*, 966 F.3d 245, 251 (3d Cir. 2020) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)).

In achieving this end, the FAA provides that a contract containing an arbitration clause "shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate." *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 537 (D. N.J. 2013) (citing 9 U.S.C. §§ 2–4).  Collectively, "those provisions [of the FAA] 'manifest a liberal policy favoring arbitration agreements.'" *Id*. (quoting *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).  In that vein, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983)).

New Jersey state law accords with the federal preference for arbitration.  The Supreme Court of New Jersey has explained that "the affirmative policy of [New Jersey], both legislative

and judicial, favors arbitration as a mechanism of resolving disputes." *Martindale v. Sandvik, Inc.,* 173 N.J. 76, 92 (2002); *see also Curtis v. Cellco Partnership,* 413 N.J. Super. 26, 34 (App. Div. 2010) ("New Jersey courts favor arbitration as a means of resolving disputes, embracing the federal policy preferring this method of alternative dispute resolution.").

Although federal and state law presumptively favor the enforcement of arbitration agreements, when a district court is presented with a motion to compel arbitration, it typically answers the following two questions before compelling arbitration pursuant to § 4 of the FAA: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem Co.*, 584 F.3d at 523.

When performing this inquiry, courts apply "ordinary state-law principles that govern the formation of contracts," *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quotations and citations omitted), and when "determining whether [a] particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT & T Techs. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650 (1986)).

## III.    DISCUSSION

### A.  Validity of the Arbitration Agreement

Plaintiff argues that the Arbitration Clause in the MPA is unenforceable as it is unconscionable.  In that connection, Plaintiff claims that the Arbitration Clause is procedurally unconscionable as a contract of adhesion.  Plaintiff insists he was presented with the MPA on a "take-it-or-leave-it" basis, and "was not offered the opportunity" to negotiate the terms of the

Agreement.  Plaintiff also maintains that he "felt he had no choice but to sign the MPA," because he had already taken significant steps in relying on Defendants' offer and would have lost out on a lucrative opportunity had he failed to sign it.  Plaintiff also argues that the Arbitration Clause is substantively unconscionable, because the terms of the Agreement are unreasonably or grossly favorable to Defendant, such as provisions on arbitrator fee-sharing, time and location requirements, and the possibility of sanctions for dilatory or bad faith behavior.

"In New Jersey, to invalidate an agreement by defense of unconscionability, a court must find both procedural and substantive unconscionability."  *Khan v. Dell Inc.*, No. 09–3703, 2014 WL 718314, at *6, 2014 U.S. Dist. LEXIS 27091, at *15 (D.N.J. Feb. 1, 2014) (citing *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 356 (1992)).  Courts have "applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability.  *Delta Funding Corp. v. Harris*, 189 N.J. 28, 40 (2006).  Additionally, "[t]he party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability."  *Montgomery v. Bristol-Myers Squibb Co.*, No. 19-19948, 2020 WL 3169373, at *3 (D. N.J. June 15, 2020) (quoting *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)).

### i.    The Arbitration Clause is Not Procedurally Unconscionable

The MPA, which contains the Arbitration Clause, is not a contract of adhesion. "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement."  *Green Tree.*, 183 F.3d at 181 (citation omitted).  The New Jersey Supreme Court "has recognized that contracts of adhesion necessarily involve indicia of procedural unconscionability."  *Delta Funding Corp.*, 189 N.J. at 39.  Such agreements are typically prepared by a party with excessive bargaining power, commonly in standardized printed form, and signed

by a weaker party on a "take-it-or-leave-it" basis without opportunity to negotiate. *Id*. at 40; *Rudbart*, 127 N.J. at 353.

Here, Plaintiff has not presented evidence of unequal bargaining power between the parties. With scant factual support, Plaintiff argues that he was an uninformed victim forced to contract with a sophisticated company, going up against BCL, which has a "state of the art laboratory for thousands of patients, healthcare professionals and corporate clients."  Pls. Opp. to Mot. to Comp. Arb. at 9.  But, plainly, Plaintiff is not the prototypical unsophisticated party typically at issue in adhesion contracts.  *See, e.g.*, *Alexander v. Anthony*, 341 F.3d 256, 266 (3d Cir. 2003) (finding procedural unconscionability in an arbitration agreement presented on a take-it-or-leave-it basis by a multinational corporation who "clearly possessed more bargaining power than two-long time equipment operators with limited educational backgrounds and, at best, very narrow options for employment.").  Rather, quite the opposite; Plaintiff is a sophisticated investor, who loaned $300,000 in exchange for plurality ownership of a business.  While a large business, such as BCL, may have access to more resources than an individual, nonetheless this is far from the "gross inequality of bargaining position" with which courts are concerned.  *Compare B & S Ltd., Inc. v. Elephant & Castle Intern., Inc.*, 388 N.J. Super. 160, 176-77 (App. Div. 2006) (finding that commercial franchise agreement was not product of unequal bargaining, and therefore not procedurally unconscionable, where it was clear that the parties had negotiated certain terms and the franchisee did not present competent evidence of disparate size, sophistication, or financial means between the franchisee and franchisor), *with Vazquez v. Glassboro Service Ass'n, Inc.*, 83 N.J. 86, 101-05 (1980) (finding employment contract of migrant farm worker evicted on the day he was fired to be unconscionable in part because company's vastly superior bargaining position resulted in contract that gave worker no reasonable time to find alternative housing after firing).

Similarly, here, other than his say so, Plaintiff presents no evidence to show that he had a grossly unequal bargaining position.

Moreover, Plaintiff has not presented evidence that the MPA was a traditional "take-it-or-leave-it" adhesion contract.  First, the plain text of the contract makes clear that this is not simply a "standardized printed form" agreement.  *See Rudbart*, 127 N.J. at 353.  The MPA has terms specific to the parties, including, among others, the loan amount, the terms of that loan, the percentage of ownership Plaintiff would acquire, when the privileges and obligations of that ownership share would vest, Plaintiff's expected sales on behalf of company, when the parties would be in default of the agreement, and the consequences of default.  Indeed, there is no doubt that there are terms of the contract which are favorable to Plaintiff.

The underlying public policy against adhesion contracts hinges on whether a party "must accept or reject" a contract, signifying that the agreement did "not [actually] result from the consent of [a particular] party."  *Vazquez*, 83 N.J. at 104.  In the instant matter, Plaintiff does not explain how the MPA was an agreement that he "must accept or reject" such that it can be determined that he never meaningfully consented to the terms of the MPA.  Plaintiff only conclusively asserts that he "felt that he had no choice but to sign the MPA" or he would lose out on a "lucrative opportunity." Pls. Opp. to Mot. to Comp. Arb. at 9.  The fact that Plaintiff sought to take advantage of the deal because of the favorable terms belies Plaintiff's argument that the MPA is an adhesion contract.  There is no evidence that Defendants refused to negotiate, or that this contract was procured by Defendants through coercive effort.

In sum, Plaintiff and Defendants engaged in a bargained for exchange of consideration that does not create the type of unequal bargaining power necessary to find procedural unconscionability.  Rather, the policy concerns are triggered where the "inherent inequity of [a]

contract arouses [such] a sense of injustice" that it requires "the equitable powers of the courts" to be invoked. *Glassboro Service*, 83 N.J. at 104-05. No such concerns have been raised here, and for these reasons, the Court finds that the MPA is not an adhesion contract and Plaintiff has not shown procedural unconscionability.

ii.     **The Arbitration Clause is Not Substantively Unconscionable**

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Green Tree*, 183 F.3d at 181. "New Jersey courts may find a contract term substantively unconscionable if it is 'excessively disproportionate' and involves an 'exchange of obligations so one-sided as to shock the court's conscience.'" *Agrabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 481 (D. N.J. 2017) (quoting *Delta Funding Corp.*, 189 N.J. at 55).

Here, Plaintiff's substantive unconscionability claim rests on a series of conclusory statements with little to no factual support. For example, the Arbitration Clause "requires [Plaintiff] to pay half of the costs and expenses of the arbitration" and "mandates that each party pay its own fees for the arbitrator[.]" Plaintiff argues that "such costs could be prohibitively high." ECF No. 14 at 11-12. But "[t]he party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood." *Spinetti v. Service Corp. Intern.*, 324 F.3d 212, 217 (3d Cir. 2003) (citing *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)); *see Kobren v. A-1 Limousine Inc.*, No. 16-516, 2016 WL 6594075 (D. N.J. November 7, 2016) (finding plaintiffs carried burden of proving that cost-sharing provision in arbitration agreement was prohibitively expensive after submitting declarations detailing their income and expenses). Plaintiff has provided no evidence whatsoever that these costs would be "prohibitively high" to him, such as evidence demonstrating his financial

inability to pay these costs.  Nor has Plaintiff submitted an estimate of the potential arbitration costs, and those potential costs in comparison to litigation.  As such, Plaintiff has fallen woefully short of meeting his burden.

Next, Plaintiff takes issue with the Arbitration Clause's venue provision, which states that arbitration will take place "in the city in which the principal place of business of the Company is then located, pursuant to the commercial arbitration rules then in effect of the American Arbitration Association (or at any other time or place under any other form of arbitration mutually acceptable to the parties involved)."  ECF No. 11 Ex. A.  Of relevance, Plaintiff maintains that the provision permitting a "mutually acceptable" location provides no indication about how such a location dispute would be settled.  This is inaccurate.  Plaintiff ignores that the American Arbitration Association's ("AAA") commercial arbitration rules, which are explicitly referenced in the Arbitration Clause, provide both parties, should they be unable to agree on a location, the opportunity to submit those disputes to the AAA.[2]  These rules also provide guidance on how an arbitrator would interpret location provisions in a contract's arbitration clause.  The venue provision of the Arbitration Clause is, therefore, not substantively unconscionable.

Finally, Plaintiff argues that the fee-shifting provision in the Arbitration Clause is unconscionable, because he is the only party subject to that provision.  The provision states that "in the discretion of the arbitrator any award may include the attorney's fees of a party if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy or claim to be submitted to arbitration as a dilatory tactic or in bad faith."

---

[2] American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, R-11. Fixing of Locale, adr.org/sites/default /files/com mercialrules_web-final.pdf. ("The parties may mutually agree on the locale where the arbitration is to be held. Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days from the date of the AAA's initiation of the case or the date established by the AAA.")

This is neither a one-sided provision, nor does it shock the Court's conscience.  First, the term "caused . . . to be submitted" applies to both parties.  Second, Plaintiff would not automatically be liable for Defendants' legal fees if he were to lose in arbitration.  The arbitrator is limited to awarding attorney fees only where he/she determines that a party submitted claims to arbitration as a dilatory tactic or in bad faith.  In fact, this type of provision is precisely consistent with the "public policy of [New Jersey]," which "permit[s] an arbitration agreement to shift costs and attorney's fees to a consumer who brings 'frivolous' or 'bad faith' claims." *Delta Funding Corp.*, 189 N.J. at 42 (finding cost-shifting provision unconscionable because, unlike New Jersey law where cost-shifting is limited to situations where conduct is frivolous or in bad faith, the arbitration clause at issue gave the arbitrator unfettered discretion to shift the entire costs of arbitration to a party without limitation) (citing N.J.S.A 2A:15-59.1 ("A party who prevails in a civil action . . . against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time that a complaint [or other action] of the nonprevailing person was frivolous.")).  Accordingly, this limited fee-shifting provision is not unconscionable.

For these reasons, the Arbitration Clause's terms are not grossly unfavorable to Plaintiff such that they "shock the court's conscience." *Agrabright*, 258 F. Supp. 3d at 481.  The Clause's terms are neither procedurally nor substantively unconscionable.

### iii.    The Arbitration Clause is Valid

Plaintiff also argues that he "did not agree" to the Arbitration Clause, because the Clause does not explicitly state that he would be "giving up his right to sue in a court," and as such, it is unenforceable since he could not have knowingly and voluntarily agreed to arbitrate.  ECF No. 16 at 15-17.  In analyzing whether an arbitration clause constitutes a valid waiver of the right to sue, the New Jersey Supreme Court has altered the waiver requirements based on the category of

contract at issue. *See In re Remicade (Direct Purchaser) Antitrust Litigation*, 938 F.3d 515, 525 (3d Cir. 2019). Indeed, the New Jersey Supreme Court has treated employment and consumer contracts differently than other agreements. *See id*. However, these separate standards do not apply to commercial contracts. *Id*. at 525-26 (surveying New Jersey Appellate Division case law and finding that "the [waiver] rule does not extend to commercial contracts."). Here, the MPA and Note are commercial agreements, while the Independent Contractor Agreement governs the employment portion of the parties' transaction. Because the New Jersey Supreme Court has treated these types of contracts differently, I will analyze the Arbitration Clause separately as it relates to the commercial contracts and the Independent Contractor Agreement.

As to the commercial contracts, Plaintiff compares the Arbitration Clause, here, to the arbitration clause in *Atalese v. U.S.*, 219 N.J. 430 (2014), and argues that, like the *Atalese* plaintiff, he too did not knowingly waive his right to litigate his claims in court. But Plaintiff ignores the key context of *Atalese*, which is that the *Atalese* contract was a *consumer* contract. *See Kernahan v. Home Warranty Adminstrator of Florida, Inc.*, 236 N.J. 301, 320 (2019) ("[T]he consumer context [in *Atalese*] mattered."). Given this, as an initial matter, *Atalese* is not applicable to the MPA or the Note, which are commercial contracts.

In *Atalese*, the New Jersey Supreme Court reversed a lower court decision compelling a consumer to arbitrate claims with her debt adjuster and found the relevant arbitration clause unenforceable because the clause in the parties' contract did not explain that the consumer was waiving her right to seek relief in court. *Id.* Indeed, the New Jersey Supreme Court in *Atalese* was mainly concerned with arbitration clauses in consumer contracts, acknowledging that "[a]rbitration provisions are now commonplace in *consumer* contracts. *Consumers* can choose to

pursue arbitration and waive their right to sue in court, but should know that they are making that

choice." *Id*. at 435 (emphasis added).  To that end, the *Atalese* court explains:

> "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." *Foulke, supra,* 421 *N.J. Super*. at 425, 24 A.3d 777. But an *average member of the public* may not know—without some explanatory comment—that arbitration is a substitute for the right to have one's claim adjudicated in a court of law.

*Id*. at 442 (emphasis added).  In articulating such a rule, the Supreme Court advised that "[a]n

arbitration provision—like any comparable contractual provision that provides for the

surrendering of a constitutional or statutory right—must be sufficiently clear to a *reasonable*

*consumer*." *Id*. at 436 (emphasis added).

Plaintiff submits that similar to the arbitration clause in *Atalese*, the Arbitration Clause in

the MPA is located at the back of the Agreement, does not explain the distinction between

arbitration and a judicial forum, and does not explain that he may be waiving his right to sue.

While it may be true that the Arbitration Clause does not contain "magic words" regarding whether

a party is giving up his or her right to sue in court, the waiver principles from *Atalese*, which focus

exclusively on the waiver standards for *consumer* contracts, do not apply to the MPA or Note,

which are commercial agreements.  *See id*. at 444 ("No particular form of words is necessary to

accomplish a clear and unambiguous waiver of rights.").  Further, as I have already discussed,

Plaintiff is not an unsophisticated actor or a consumer.  In comparison to everyday consumers

signing contracts with corporate entities, Plaintiff was in a far more equal bargaining position to

BCL.  Thus, *Atalese* does not control here, where Plaintiff's contract claims, related to the MPA

and Note, arise out of the parties' business relationship.  *See, e.g.*, *Emcon Assocs., Inc. v. Zale*

*Corp., Sterling Jewelers Inc.*, No. 16-1985, 2016 WL 7232772, at *5 (D. N.J. Dec. 14, 2016)

("New Jersey state courts and courts in this district have all limited the holdings in *Atalese* and

*Garfinkel* to consumer and employment contexts in which those cases were decided.  Indeed, neither *Atalese* nor *Garfinkel* involved a commercial transaction with two sophisticated entities, such as the transaction here[.]"); *Kernahan*, 236 N.J. at 319 (explaining that *Atalese* "repeatedly notes that it is addressing a form consumer contract, not a contract individually negotiated in any way; accordingly, basic statutory consumer contract requirements about plain language implicitly provided the backdrop to the contract under review."); *Victory Entm't, Inc. v. Schibell*, No. A-3388-16T2, 2018 WL 3059696, at *4 (App. Div. Jun. 21, 2018) (rejecting application of *Atalese* and compelling arbitration where contract at issue was not "a consumer contract" that involved "average members of the public" (quoting *Atalese*, 219 N.J. at 442, 444)).

While *Atalese* does not apply to the MPA or Note, it also does not apply to the Independent Contractor Agreement, which is an employment agreement.  Although the New Jersey Supreme Court has limited the *scope* of broadly worded employee arbitration agreements, they have not found these agreements *unenforceable*.  *See Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124 (2001) (finding employment arbitration agreement to be valid but limiting scope of agreement to claims arising under contract and not encompassing statutory claims); *Martindale v. Sandvik, Inc.,* 173 N.J. 76 (2002) (finding broadly worded employment arbitration agreement to be valid and to constitute a knowing and voluntary waiver of the plaintiff's rights to litigate statutory claims in court).  This is because in the employment context, and unlike in *Atalese*, the "plaintiff's level of sophistication is not central" to determining whether waiver occurred, but rather, courts will look to the plain text of the arbitration clause to determine whether a party has knowingly waived his or her right to bring certain claims in court.  *Martindale*, 173 N.J. at 96-97 (citing *Garfinkel*, 168 N.J. at 136 ("Defendants suggest that the Court should focus predominately on plaintiff's level of sophistication to ensure that he acted of his own volition. That

suggestion is misplaced. Irrespective of plaintiff's status or the quality of his counsel, the Court must be convinced that he actually intended to waive his statutory rights. An unambiguous writing is essential to such a determination.")）

*Garfinkel* is instructive. In *Garfinkel*, a doctor sued his employer for breaching an employment contract and violating the New Jersey Law Against Discrimination ("LAD"), among other common-law claims. *Id*. at 127. The employer moved to compel arbitration, citing the employment contract's arbitration clause, which read in relevant part, "[A]ny controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in Morristown, New Jersey, in accordance with the rules then obtaining of the American Arbitration Association[.]" *Id*. The Court noted that the arbitration clause language, which limited its coverage to claims "arising out of . . . this Agreement[,]" suggested that the parties "intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself." *Id*. at 134. The Court also stated that the arbitration clause did "not mention, either expressly or by general reference, statutory claims redressable by the LAD." *Id*. The Court found that the arbitration clause, specifically in the employment context, was "insufficient to constitute a waiver of plaintiff's" statutory remedies. *Id*. Turning to the common-law claims, the Court explained that "[a]s a general rule, courts have construed broadly worded arbitration clauses to 'encompass[]' tort, as well as contract claims," and that, therefore, "the Court assumes . . . that plaintiff's common-law claims are subject to arbitration." *Garfinkel*, 168 N.J. at 137 (quoting *Bleumer v. Parkway Ins. Co.*, 277 N.J. Super 378, 405 (Law Div. 1994)).

Similarly, the Arbitration Clause here is valid as to the breach of contract claim arising out of the Independent Contractor Agreement. The Clause contains nearly identical language to the valid employment arbitration agreement in *Garfinkel*. *Compare* ECF No. 11 Ex. A ("Any dispute,

controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach hereof shall . . . be submitted to, and settled by, arbitration[.]"), *with Garfinkel*, 168 N.J. at 128 ("any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration[.]"); *see also Martindale*, 173 N.J. at 81-82 ("I agree that all disputes relating to my employment . . . or termination thereof shall be decided by an arbitrator[.]").  As noted in *Garfinkel* and *Martindale*, courts generally construe such broadly worded arbitration clauses to be valid.  *See Garfinkel*, 168 N.J. at 137; *Martindale*, 173 N.J. at 96.  Further, both *Garfinkel* and *Martindale* confirm that party sophistication is not central to the waiver analysis in the employment context.  *See Martindale*, 173 N.J. at 96-97 (citing *Garfinkel*, 168 N.J. at 136). Thus, in the employment context, my analysis regarding waiver focuses on the plain text of the Arbitration Clause and determining its scope to ascertain whether Plaintiff knowingly waived his right to bring his contract claims in a judicial forum.  I separately discuss his statutory claims, *infra*, which I find stand on a different footing.

In sum, the Arbitration Clause's terms are neither procedurally nor substantively unconscionable, the language of the Clause also does not render it unenforceable, and therefore, the Clause is valid.

### B.  Scope of the Arbitration Clause

Having decided that the Arbitration Clause is valid, the Court must next determine the scope of the clause.  "Whether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." *CardioNet, Inc., v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014).

Here, Plaintiff contends that even if the Arbitration Clause is valid, the scope of the Clause is limited exclusively to Plaintiff's claim for breach of the MPA, and that as a result, his other four

claims fall outside the Clause's scope.  In this regard, Plaintiff asks this Court to compel arbitration only on the claim for breach of the MPA, and retain jurisdiction over the remaining four.  As support for his position, Plaintiff maintains that neither the Independent Contractor Agreement nor the Note contains an arbitration clause.  Further, Plaintiff points out that the Independent Contractor Agreement contains a conflicting forum selection clause which provides that all disputes arising under the Agreement are to be brought in the courts of Mercer County, New Jersey. This conflicting clause, Plaintiff argues, would require all claims arising from the Independent Contractor Agreement, including his two state statutory claims, to be litigated "in Court," rather than in arbitration.  Finally, Plaintiff contends that the Arbitration Clause was too ambiguous to constitute a knowing waiver of his right to sue in court.

I find that the Arbitration Clause applies to the three breach of contract claims, but not to the two statutory claims.  Before discussing the Arbitration Clause's scope, however, I address two preliminary issues raised by Plaintiff's arguments: (1) whether the Independent Contractor Agreement and Note are incorporated into the MPA; and (2) whether the Arbitration Clause and the forum selection provision, in the Independent Contractor Agreement, are inconsistent.

### i.   The Independent Contractor Agreement and Note Are Incorporated Into the MPA

Under New Jersey law, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Bacon v. Avis Budget Group, Inc.*, 959 F.3d 590, 600 (3d Cir. 2020) (quoting *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 308 (2016)).  "New Jersey law permits contract terms to be incorporated by reference." *Id*.  "[F]or there to be a proper and enforceable incorporation by reference of a separate document, (1) the separate document must be described in such terms that its identity may be ascertained beyond doubt and (2) the party to be bound by the terms must have had knowledge of and assented to the

incorporated terms." *Id.* (internal quotations omitted) (quoting *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super. 510, 533 (App. Div. 2009)) (finding separate document not incorporated into main agreement because document was not "specific or identifiable" nor was there evidence plaintiffs ever knew of the document).

Here, the identity of the Independent Contractor Agreement and Note are sufficiently described and referenced to be incorporated into the MPA. *See Alpert*, 410 N.J. Super. at 533 (quoting 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30:25 (4th ed. 1999) ("Generally, all writings which are part of the same transaction are interpreted together.")). In addition to the fact that the parties executed the three agreements at the same time, the MPA explicitly incorporates the Independent Contractor Agreement by reference and attaches it to the MPA. ECF No. 11 Ex. A. ("The Independent Contractor Agreement is annexed hereto as Exhibit D and incorporated herein by reference."). Moreover, the Independent Contractor Agreement is described in specific and identifiable terms in the MPA such that it can be ascertained beyond doubt.

Neither has Plaintiff presented any evidence that he was not aware of the Independent Contractor Agreement when he signed it at the same time as the MPA. Rather, the Independent Contractor Agreement was an integral part of the overall transaction between the parties and governed Plaintiff's marketing and sales duties on behalf of BCL, a key portion of the MPA. Indeed, according to these terms, Plaintiff acquired a 40% share of BCL, and in exchange, Plaintiff agreed that he would bring in $300,000 in gross sales per month over a 12-month period. ECF No. 11 Ex. A. This aspect was so critical to the deal that the MPA provides that Defendants could terminate the MPA "if and only if the [Plaintiff] does not meet the aforesaid sales target." *Id*. The MPA further provides, "Nothing contained herein will affect the commissions earned by the

[Plaintiff] pursuant to the Independent Contractor Agreement[.]"  *Id*.  Given the significance of the Independent Contractor Agreement to the overall investment transaction under the MPA, it strains credulity that Plaintiff was not aware of its terms or that it existed.  As such, I find the Independent Contractor Agreement is incorporated into the MPA by reference.

The same holds true for the Note.  The MPA states:

> In consideration of the agreements of [Defendants] hereunder, [Plaintiff] shall make a loan to the company of $300,000, which shall be paid to Company at Closing. Said loan shall be evidenced by a Note executed by the Company attached hereto as Exhibit C.

*Id*.  Although the Note does not have the same "incorporated by reference" language as the Independent Contractor Agreement, the Note is clearly and undoubtedly ascertainable.  For one, the Note is expressly listed as "attached" to the MPA, and more importantly, its terms are similarly fundamental to the MPA; it is difficult to conceive that the Note was not ascertainable at signing. The title of the Note is "Promissory Note," which is easy to understand as the document referenced by the MPA.  ECF No. 11 Ex. C.  Also, the opening clause of the Note explains that "Capitalized Terms used in this Agreement which are not otherwise defined *shall have the respective meanings given to them in the Membership Purchase Agreement*."  *Id*. (emphasis added).  In that regard, both Agreements cross reference each other, such that the Note, signed by Plaintiff, is sufficiently described to be incorporated.

Plaintiff also "had knowledge of and assented to the incorporated terms" of the MPA. *Bacon*, 959 F.3d at 600.  Plaintiff affixed his signature at the end of the MPA, the Independent Contractor Agreement, and the Note.  Even further, Plaintiff initialed the bottom of *every page* of the MPA.  The Third Circuit has affirmed that "where a party affixes [her] signature to a written instrument, . . . a conclusive presumption arises that [she] read, understood and assented to its terms and [she] will not be heard to complain that [she] did not comprehend the effect of [her] act

in signing." *MZM Construction Company, Inc. v. New Jersey Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020) (quoting *Peter W. Kero, Inc. v. Terminal Const. Corp.*, 6 N.J. 361 (1951)).  This is because "if all it took to avoid a signed contract was to claim ignorance of its content or legal effect, 'contracts would not be worth the paper on which they are written.'" *Id*. (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)).  Plaintiff's signatures, combined with the circumstantial evidence of knowledge of the terms of the MPA discussed *supra*, is sufficient to show that Plaintiff understood that both the Independent Contractor Agreement and the Note were incorporated into the MPA, and that he agreed to such incorporation.  The practical effect of this incorporation is that the three Agreements will be read and construed together as a single, unitary contract.  *See Lawrence v. Tandy & Allen, Inc.*, 14 N.J. 1, 7 (1953) ("[W]here the agreement is evidenced by more than one writing, all of them are to be read together and construed as one contract, and all the writings executed at the same time and relating to the same subject-matter are admissible in evidence." (citing *Gould v. Magnolia Metal Co.*, 69 N.E. 896, 898 (Ill. 1904))); *Van Orman v. American Ins. Co.*, 680 F.2d 301, 307 (3d Cir. 1982) ("We recognize that, under New Jersey law, two or more writings may constitute a single contract even though they do not refer to each other.  Whether two writings are to be construed as a single contract, however, depends on the intent of the parties." (internal citations omitted)); *Newark Bay Cogeneration Partnership, LP v. ETS Power Group*, No. 11-2441, 2012 WL 4504475, at *8-11 (D.N.J. Sept. 28, 2012) (citing *Van Orman* for the proposition that two or more writings may constitute a single contract and finding a disputed arbitration provision to be incorporated by reference into overall contract); *Victory Entm't, Inc. v. Schibell*, 2018 WL 3059696, at *9 ("Where 'two documents were separate pieces of paper but it was obvious . . . that they were interrelated parts of a single transaction,' the documents are treated as a unitary contract." (citing *Gen. Inv. Corp. v. Angelini*, 58 N.J. 396, 400

(1971))); *Stollsteimer v. Foulke Management Corp.*, No. A-1182-17T3, 2018 WL 3117214, at *2-3 (App. Div. Jun. 26, 2018) (applying *Lawrence* and finding that three sales documents incorporated each other by reference, forming "a single, integrated contract.").

> ### ii.   The Arbitration Clause and Venue Provision in the Independent Contractor Agreement Are Reconcilable

Although the Independent Contractor Agreement and Note are incorporated into the MPA, Plaintiff points out that the Independent Contractor Agreement contains a provision that conflicts with the Arbitration Clause, titled "Controlling Law, Jurisdiction, and Venue" ("Venue Provision" or "Provision").  Based on this clause, Plaintiff argues that this evinces the parties' intention that claims arising from the Independent Contractor Agreement are governed by the Venue Provision, and thus, outside the Arbitration Clause's scope.  I disagree.  The Venue Provision reads in relevant part:

> *Controlling Law, Jurisdiction, and Venue*. This Agreement will be governed by and construed in accordance with the laws of the State of New Jersey. Any claim arising out of or relating to this Agreement or its subject matter or any right or obligation created by this Agreement, irrespective of legal theory or claims underlying such dispute, will be brought and determined exclusively in the courts of Mercer County in the State of New Jersey.

ECF No. 11 Ex. B.  Courts "are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible." *Cardionet,* 751 F.3d at 174 (quoting *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.,* 381 F.3d 131, 137 (3d Cir. 2004)).  "It is elementary that a written contract is to be construed so as to give effect to all of its parts, and any construction which would render the agreement meaningless should be avoided." *New Wrinkle, Inc. v. John L. Armitage & Co.*, 238 F.2d 753, 757 (3d Cir. 1956).  In doing so, courts must be mindful to not "interpret[] one provision in isolation from others pertaining to the same subject." *Lesage v. JC Penney Co.*, No. L-6421-

05, 2012 WL 1059332, at *13 (App. Div. Mar. 30, 2012) (citing *Newark Publishers' Ass'n. v. Newark Typographical Union*, 22 N.J. 419, 426 (1956)).

Here, the Arbitration Clause and the Venue Provision are not in conflict.  Instead, the Arbitration Clause provides an alternative method for resolving the parties' disputes; it states, in pertinent part, that:

> Any dispute, controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach hereof shall, *upon the request of any party involved*, be submitted to, and settled by, arbitration in the city in which the principal place of business of the Company is then located[.]

ECF No. 11 Ex. A (emphasis added).  While the scope of the MPA's Arbitration Clause is broad and would cover most disputes, as explained *infra*, it is not mandatory that the parties *must* arbitrate any dispute under all circumstances. The Arbitration Clause is *only* is triggered "upon the request of any party involved." *Id*.  If neither party requests that a "dispute, controversy or claim" be submitted to arbitration, then arbitration will not be required. *Id*.  The Venue Provision would thus apply in the following two situations: (1) where neither party requests a dispute be submitted to arbitration, or (2) the claims brought by either party that are outside the scope of the Arbitration Clause.  Accordingly, contrary to Plaintiff's argument, the Arbitration Clause and Venue Provision are not inconsistent. Therefore, the Venue Provision does not bar this Court from enforcing the Arbitration Clause.[3]

---

[3] Plaintiff argues that Defendants have not asserted sufficient facts to facially prove arbitrability, and therefore, the Court should permit discovery rather than decide the matter now under Rule 12(b)(6).  I disagree.  "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, L.L.C,* 716 F.3d 764, 776 (3d Cir. 2013) (internal citations and quotations omitted).  It is apparent on the face of the Amended Complaint and the accompanying documents that Counts I, II, and III are subject to an enforceable arbitration clause.  For this reason, Plaintiff's request for limited discovery is denied.

###### iii. Plaintiff's Statutory Claims Are Outside the Arbitration Clause's Scope

Courts "have generally read the terms 'arising out of' or 'relating to' a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in *any* way to the contract." *Curtis*, 413 N.J. Super. at 37-38. Such "broad clauses have been construed to require arbitration of any dispute between the contracting parties that is connected in any way to their contract." *Id*. at 38. These broadly drafted arbitration agreements are entitled to a "presumption of arbitrability." *Century Indem. Co.*, 584 F.3d at 524. Thus, "'in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Broth. of Teamsters,* 812 F.2d 91, 95 (3d Cir. 1987)) (quoting *AT & T Techs.,* 475 U.S. at 650 (1986)). Here, the language of the Arbitration Clause supports a broad construction. As set forth more fully, *supra*, the Arbitration Clause covers "[a]ny dispute, controversy or claim arising out of or in connection" with the agreements.

As a preliminary issue, Plaintiff does not argue that his three breach of contract claims are outside of the scope of the Arbitration Clause. Nor can he, as these claims clearly arise out of the unitary contract that is the MPA, Independent Contractor Agreement, and Note. *See., e.g.*, *Lawrence*, 14 N.J. at 7.

The two statutory claims, however, stand on different footing. Plaintiff brings claims for violations of the New Jersey Wage Payment Law (N.J.S.A. 34-4.1, *et seq*) and the New Jersey Sales Representatives' Rights Act (N.J.S.A. 2A:61A-1). Plaintiff argues that he "did not agree" to the Arbitration Clause, because the Clause does not explicitly state that he would be "giving up his right to sue in a court," and as such, he did not waive his right to bring *any* of his non-contract claims in court. ECF No. 16 at 15-17. I agree with Plaintiff as to the two statutory claims.

Under New Jersey law, for an arbitration clause covering statutory claims to be valid in an employment context, the clause must meet three requirements.  First, the clause "must identify the general substantive area the clause covers[,]" as in, the clause "should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination."  *Moon v. Breathless Inc*, 868 F.3d 209, 214 (3d Cir. 2017) (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. at 135).   Second, the clause "must reference the types of claims waived by the provision."  *Id*.  This does not mean "the arbitration clause has to identify the specific constitutional or statutory right guaranteeing" access to the courts, but it should "reflect the employee's general understanding of the type of claims included in the waiver, *e.g.*, workplace discrimination claims."  *Id*. (quoting *Atalese*, 219 N.J. at 446-47; *Garfinkel*, 168 N.J. at 135).  Third, the clause "must explain the difference between arbitration and litigation."  *Id*.  "That is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum."  *Id*. (quoting *Atalese*, 219 N.J. at 445).

So far, the rule has only applied "in the context of employment and consumer contracts," and the Third Circuit and the New Jersey Appellate Division have held on several occasions that "the rule does not extend to commercial contracts, i.e., contracts that resulted 'from a lengthy negotiation process' and where no party was an 'average member of the public.'"  *In re Remicade (Direct Purchaser) Antitrust Litigation*, 938 F.3d at 525-26 (alteration in original) (internal citations omitted) (quoting *Victory Entm't*, 2018 WL 305969, at *8); *see, e.g.*, *Gastelu v. Martin*, No. A-0049-14T2, 2014 WL 10044913, at *6 & n.4 (App. Div. July 9, 2015) ("Parties to a commercial contract can express their intention to arbitrate their disputes rather than litigate them in court, without employing any special language . . . . . In the present case . . . we are dealing with

commercial business transaction [sic] and, therefore, the standard is not as stringent [as the one put forward in *Atalese*].").

Here, as a threshold matter, the contract contains both a commercial and employment component. The parties engaged in a commercial bargain whereby Plaintiff loaned $300,000 to BCL in exchange for a 40% share of the company. But, as part of the transaction, Plaintiff agreed to be employed by BCL as an independent contract by directing his book of business to BCL, for which he would be paid commissions pursuant to the Independent Contractor Agreement. *Moon*'s handling of a mixed commercial and employment contract is instructive.

In *Moon*, the plaintiff ("Moon") brought an action against an adult entertainment club ("Club") alleging various statutory employment law claims, including a claim under the New Jersey Wage Payment Law, the same statute at issue here. *Moon*, 868 F.3d at 211-12. Moon, an exotic dancer, signed a contract with commercial and employment elements, agreeing to rent performance space from the Club, and signing an "Independent Dancer Rental Agreement," ("Rental Agreement"), which stated Moon was an independent contractor, and not an employee. *Id*. at 211. That agreement also contained an arbitration clause, which read, in relevant part:

> In a dispute between Dancer and Club under this Agreement, either may request to resolve the dispute by binding arbitration. THIS MEANS THAT NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL—DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.

*Id*. at 212. The defendant moved to compel arbitration, and the district court found that all of Moon's claims fell within the scope of the Rental Agreement's arbitration clause, but the Third Circuit reversed. *Id*. at 212, 218. Applying the three requirements described *supra*, and comparing the Rental Agreement's arbitration clause to *Garfinkel*, *Atalese*, and *Martindale*, the *Moon* court determined that "the arbitration clause at issue here . . . references contract disputes-not statutory

rights." *Id*. at 216.   In so doing, the Third Circuit applied the standard of *Garfinkel* to a contract that involved a commercial lease, as well as an independent contractor agreement.   Furthermore, the court explicitly rejected the argument that independent contractor agreements are unlike traditional employment contracts.

First, the Third Circuit found that the arbitration clause's "under this Agreement" language limited disputes solely to contract claims, and not statutory claims.   *Id*.   The circuit court noted that such language was analogous to the arbitration clause language at issue in *Garfinkel* and *Atalese*, where the New Jersey Supreme Court found that these arbitration clauses were "applicable only to contract claims."   *Id*.; *see Garfinkel*, 168 N.J. at 128 ("any controversy or claim arising out of, or relating to, this Agreement or the breach thereof . . ."); *Atalese*, 219 N.J. at 437 ("any claim or dispute ... related to this Agreement or related to any performance of any services related to this Agreement . . .").   According to the Third Circuit, the "this Agreement" language acted as a limiting principle on what the arbitration clause covered: only disputes regarding the terms of the Rental Agreement.   *Id*.

Next, the Third Circuit found that because the "arbitration clause does not reference employment or status as an independent contractor," based upon the limiting principle, the clause does not properly identify the types of claims waived by the clause.   *Id*. at 216-17; *but see Martindale*, 173 U.S. at 94-97 (finding contract sufficiently broad to cover statutory claim because it did not limit disputes to the relevant agreement, referenced claims "related to my employment with" the employer, and gave notice to all parties that they were waiving their right to jury trial).   The circuit court concluded that "because Moon's claims arise under statutes rather than the Contract, we find that the arbitration clause does not cover Moon's statutory wage-and-hour claims."   *Id*. at 218.

27

Like Moon, Plaintiff entered into a commercial transaction that required him to direct business to BCL, and he also agreed to work for Defendants as an independent contractor.  The crux of Plaintiff's statutory claims, regardless of whether he is considered an employee or independent contractor, are based on the allegedly unpaid commissions he is owed under the Independent Contractor Agreement.  Thus, I do not consider this matter to fall under the purely commercial line of cases described by *In re Remicade*.  938 F.3d at 525-26

Moreover, like *Moon*, the Arbitration Clause only covers contract claims, and not statutory claims.  Indeed, the Arbitration Clause contains the same limiting language as in *Moon*, *Atalese*, and *Garfinkel*.  *See* ECF No. 11 Ex. A ("Any dispute, controversy or claim arising out of or in connection with *this Agreement* or any breach or alleged breach hereof . . ." (emphasis added)).  As the Third Circuit explained, this language "references contract disputes-not statutory rights." *Moon*, 868 F.3d at 216.  And, the Arbitration Clause does not reference a category of statutory claims waived by the Clause, let alone specific statutes.  *See id*.  Finally, the Clause does not explain that "there is a distinction between resolving a dispute in arbitration and a judicial forum." *See id*; *Moon*, 868 F.3d at 214 (quoting *Atalese*, 219 N.J. at 445).  Therefore, because Plaintiff's employment-related claims arise under New Jersey statutes, I find that the Arbitration Clause does not cover these claims.  Rather, these claims shall proceed in court.

This conclusion, however, raises an issue not addressed by the parties.  As discussed *supra*, the Venue Provision of the Independent Contractor Agreement applies when claims fall outside the scope of the Arbitration Clause.  According to the Venue Provision, "Any claim arising out of or relating to this Agreement or its subject matter or any right or obligation created by this Agreement . . . will be brought and determined exclusively in the courts of Mercer County in the State of New Jersey."  ECF No. 11 Ex. B.  This Provision, however, does not clearly provide

whether a claim must be brought in a state court or may be brought in a federal court located in Mercer County, i.e., the United States District Court, Trenton Vicinage.  Defendants, in fact, implied in their briefing that this case should have been brought in *state* court, rather than federal court.  ECF No. 18 at 7 ("Plaintiff also highlights the fact that the MSCA states all disputes 'will be brought . . . in the courts of Mercer County in the State of New Jersey.' . . . Plaintiff forgets he is making this argument before a federal district court in a case *he* initiated.  Plaintiff chose to ignore this mandate upon bringing the instant action but is now seeking to rely on it with regard to the arbitration dispute.").

Given the lack of clarity and that this is a threshold issue as to whether the statutory claims may be adjudicated in this Court, I direct the parties to submit supplemental briefing, pursuant to the instructions *infra*, on whether the Venue Provision requires these claims to be brought in state court.

## IV.  STAY OF THE BREACH OF CONTRACT CLAIMS

Although both of Defendants' motions seek to compel arbitration as to Plaintiff's claims, their requests differ as to how this case should proceed should arbitration be approved.  Pendergraft and BCL request that the Court "compel this matter to arbitration and dismiss the Amended Complaint with prejudice," while Talwar requests that this Court "must stay judicial proceedings and compel arbitration of Plaintiff's claims[.]"

The Third Circuit has held that the plain language of § 3 of the FAA "affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."  *Lloyd v. Hovensa, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004).  Because Talwar requested a stay of the proceedings, the Court must stay the proceedings as to Plaintiff's three breach of contract claims.

## V.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Because I have found that Counts IV and V are not arbitrable, and that there is an open question as whether these claims are properly before the Court, vis-à-vis the Venue Provision in the Independent Contractor Agreement, the Court denies Defendant Pendergraft and BCL's Motion to Dismiss for Failure to State a Claim as to Counts IV and V without prejudice.  Should these claims remain in this Court, the Motion to Dismiss on the merits of these claims will be relisted for disposition.

## VI.     CONCLUSION

For the reasons set forth above, Defendants' motions to compel arbitration are **GRANTED in part** and **DENIED in part**.  Defendants' motions to compel arbitration are granted as to Counts I, II, and III, and a stay is issued as to those claims in this Court.  Defendants' motions to compel arbitration are denied as to Counts IV and V.  Defendants shall submit the supplemental briefing on the issue of venue within 14 days from the date of the accompanying order.  Plaintiff may submit a response within 14 days after being served with Defendants' supplemental brief.  With respect to Pendergraft and BCL's Motion to Dismiss for Failure to State a Claim, as to Counts IV and V that motion is denied without prejudice until the Court decides if the statutory claims are properly before this Court.  In the event Counts IV and V remain in this Court, I will relist and resolve that Motion to Dismiss.


Dated: 10/8/2021

                                                    /s/ Freda L. Wolfson
                                                    Hon. Freda L. Wolfson
                                                    Chief Judge