***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC DIVALERIO<br><br>Plaintiff,<br><br>v.<br><br>BEST CARE LABORATORY, LLC, RAJEEV TALWAR, and TARA PENDERGRAFT,<br><br>Defendants. | Civil Action No. 20-17268 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff Eric DiValerio brought this suit against defendants Best Care Laboratory, LLC, ("BCL"), Rajeev Talwar, and Tara Pendergraft (collectively, "Defendants"), alleging breach of three agreements between the parties, namely, the Membership Purchase Agreement ("MPA"), the Marketing and Sales Contractor Agreement ("Independent Contractor Agreement" or "the Agreement"), and a Promissory Note ("Note"), which all relate to Plaintiff's purchase of BCL ownership shares in exchange for various consideration. Plaintiff also asserts violations of the New Jersey Wage Payment Law (the "Wage Law"), N.J.S.A 34:11-4.1, *et seq*., and the New Jersey Sales Representatives' Rights Act ("SRRA"), N.J.S.A. 2A:61A-1, *et seq*.

Defendants brought a Motion to Compel Arbitration, or in the alternative, Motion to Dismiss the Amended Complaint,[1] and on October 8, 2021, the Court granted Defendants' Motion

---

[1] Defendant Talwar only filed a Motion to Compel Arbitration, whereas Defendants BCL and Pendergraft jointly filed a Motion to Compel Arbitration, or in the alternative, Motion to Dismiss the Amended Complaint. ECF Nos. 14, 15.

1

to Compel Arbitration as to Plaintiff's breach of contract claims, but denied the Motion as to their Wage Law and SRRA claims. *DiValerio v. Best Care Laboratory, LLC*, No. 20-17268, 2021 WL 4704963 (D.N.J. Oct. 8, 2021). Furthermore, because of an ambiguous venue provision in the Independent Contractor Agreement, the Court requested supplemental briefing regarding whether federal or state court was the proper venue to adjudicate the remaining Wage Law and SRRA claims. *Id*. On October 20, 2021, the parties sent a letter to the Court consenting to remain in federal court. ECF No. 25.

In light of the parties' letter, the Court will resolve Defendant BCL and Pendergraft's joint Motion to Dismiss the Wage Law and SRRA claims. ECF No. 14. For the reasons set forth below, Defendants Motion to Dismiss is **GRANTED** as to the Wage Law claim (Count IV), and **DENIED** as to the SRRA claim (Count V).

## I. FACTUAL BACKGROUND

The Court incorporates the facts from its prior Opinion and sets forth only the facts relevant to this Motion to Dismiss. Pursuant to the MPA, Defendants agreed to sell a 40% interest in BCL to Plaintiff, and in exchange, Plaintiff agreed to, among other things, "direct his book of business exclusively to [BCL]," for which Plaintiff would earn commissions on his sales according to the Independent Contractor Agreement. Am. Compl. ¶¶28, 37; Exs. A, B. According to this Agreement, BCL "engages in the business of providing laboratory services in the field of clinical laboratory services . . . to the medical community, including the physician-office market[,]" and Plaintiff "possesses certain skills and experiences in marketing and selling services such as those provided by [BCL.]" Am. Compl. Ex. B. As such, under this Agreement, BCL agreed to retain Plaintiff "on a non-exclusive basis, as a sales and marketing representative" and that Plaintiff

would provide these services[2] "as an independent contractor to [BCL], and not as an employee, joint venturer, partner, agent, principal, or otherwise." *Id*. Additionally, the Agreement notes that Plaintiff "is not authorized to and shall not act on behalf of [BCL] or bind [BCL] in any manner." *Id*. Further, under Exhibit A of the Independent Contractor Agreement, Plaintiff's

> compensation for the Services will be solely comprised of a Commission (the "Commission"). Contractor will receive a 25% (the "Commission Rate") of Net Sales for blood and 50% Commission Rate for toxicology. "Net Sales" means the cash payments actually received by [BCL] with respect to the sale of services to third party customers or clients through [BCL's] material and direct efforts, less offsets, refunds and credits. No Commission can be earned following the termination of this Agreement by [BCL] for Cause, however, all previously earned but not yet paid commissions shall be payable to the [Plaintiff]. All pricing to customers or clients must be approved in writing by the Company in advance."

Relevant to the parties' sales arrangement, under the MPA, Plaintiff represented that he would bring in an average of $300,000 in gross sales per month over the first 12 months. *Id*. ¶28, 31; Ex. A. If Plaintiff failed to reach this goal, the MPA provided BCL with "the option of refunding the [Plaintiff's] $300,000 loan and Terminating the [MPA]." *Id*. Ex. A. But, the MPA also stated that

---

[2] The Independent Contractor Agreement presumably contains an error, and omits the exact services Plaintiff is to provide under this Agreement. Section 1 states that:

> [BCL] agrees to retain Contractor, on a non-exclusive basis, as a sales and marketing representative for the purpose of providing [BCL] with the following services solely within the Territory set forth in Exhibit A (collectively, the "Services"):
>
> > a. comply with and participate in all training and education programs of [BCL], and shall comply with all applicable policies of Company that have been delivered to Contractor;
> >
> > b. attend meetings with [BCL's] management team, the time of which shall be mutually agreeable to [Plaintiff] and [BCL].

These terms do not appear to be "services," but rather, commitments to comply with BCL training policies and attend management meetings. Because Plaintiff's working relationship with, and the services he provided to, BCL are directly at issue on this Motion, the Court will glean, as best it can, the contours of Plaintiffs' role and relationship with BCL from the pleadings and agreements.

"[n]othing contained herein will affect the commissions earned by the [Plaintiff] pursuant to the Independent Contractor Agreement[.]" *Id.*

## II.     LEGAL STANDARD

A court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotations and citations omitted); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]") (quotations and citations omitted). Thus, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a motion to dismiss for failure to state a claim, district courts engage in a three-step progression.

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim[.]" *Iqbal*, 556 U.S. at 676. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Third, "[w]hen

4

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* "This means that the inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" indeed, mere consistency with liability is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, a plaintiff may not be required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (citation omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010), cert. denied, 565 U.S. 817 (2011). Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss

into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. DISCUSSION

#### A. New Jersey Wage Payment Law Claim

Plaintiff alleges that he is owed over $100,000 in earned, but unpaid, commissions for sales he made on behalf of BCL. Am. Compl. ¶101. Furthermore, Plaintiff alleges that, "despite the language contained" in the Independent Contractor Agreement, Plaintiff meets the Wage Law's definition of employee. *Id.* ¶100. Defendants disagree, and argue that Plaintiff has failed to state a claim under the Wage Law because, among other reasons, Plaintiff has not plead substantive facts that he is an employee under the Law; that is, the allegations do not describe the nature of the parties' working relationship, nor cite to any agreement indicating that Plaintiff was an employee, as opposed to an independent contractor. Def. Br. at 12. I find that Plaintiff has failed to sufficiently allege that he is an employee under the Wage Law.

> The Wage Law provides, in relevant part, that:
>
> Whenever an employer discharges an employee . . . or whenever an employee quits, resigns, or leaves employment for any reason, the employer shall pay the employee all wages due not later than the regular payday for the pay period during which the employee's termination, suspension, or cessation of employment . . . took place . . . or in the case of employees compensated in part or in full by an incentive system, a reasonable approximation of all wages due, until the exact amounts due can be computed.

N.J.S.A. § 34:11-4.3.

The statute defines employee as "any person suffered or permitted to work by an employer, except that independent contractors shall not be considered employees." N.J.S.A. § 34:11-4.1(b).[3] The Wage Law does not define "independent contractor," and is "silent as to the distinction between employee and independent contractor." *Soranno v. Heartland Payment Systems*, No. 18-16218, 2020 WL 5652469, at *11 (D.N.J. Sept. 23, 2020) (citing *Hargrove v. Sleepy's, LLC*, 220 N.J. 289, 306 (2015)). Accordingly, the New Jersey Supreme Court has held that the "ABC" test governs whether an individual is an employee or independent contractor under the Wage Law. *Hargrove*, 220 N.J. at 314-16. This test "presumes an individual is an employee" unless the employer can show:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

*Id.* at 305 (quoting N.J.S.A. 43:21-19(i)(6)). Under the test, "the failure to satisfy any one of the three criteria results in an 'employment' classification." *Id.* (quoting *Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor*, 125 N.J. 567, 581 (1991)).

---

[3] An employer is "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executory of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, employing any person in this state." *Id.* § 34:11-4.1(a). For purposes of the Wage Law, "the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation." *Id.* Defendants are BCL, itself, Talwar, who is a managing member of BCL and the company's Chief Executive Officer, and Pendergraft, who is a managing member of BCL and the company's President. Am. Compl. ¶¶8,9. Therefore, each Defendant constitutes an employer, such that each of them may be sued under the Wage Law.

While I acknowledge the New Jersey Supreme Court's pronouncement that the ABC test "presumes a person seeking protection" of the Wage Law is an employee unless the employer can meet the ABC factors, *Hargrove*, 220 N.J. at 313, however, on a motion to dismiss, Plaintiff still must plausibly allege a claim for relief. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Here, on the face of the Amended Complaint, and based on the agreements, Plaintiff was expressly hired as an Independent Contractor. Indeed, the MPA refers to the contractor agreement as the "Independent Contractor Agreement." Am. Compl. Ex. A ("Nothing contained herein will affect the commissions earned by the [Plaintiff] pursuant to the Independent Contractor Agreement.") ("The Independent Contractor Agreement is annexed hereto as Exhibit D and is incorporated herein by reference."). According to the Independent Contractor Agreement, Plaintiff was retained as a contractor "on a non-exclusive basis." *Id*. Ex. B. Moreover, the Agreement stated that the services provided by Plaintiff would be "as an independent contractor to [BCL], and not as an employee, joint venturer, partner, agent, principal, or otherwise." *Id*. Because of this agreed upon status, the Wage Law does not govern Plaintiff's commissions. *See* N.J.S.A. § 34:11-4.1(b). Logically, because Plaintiff cannot show that he is entitled to raise a Wage Law claim at the threshold level, Defendants do not have the burden of proving Plaintiff is, in fact, an independent contractor, rather than an employee.

Regardless of that express classification, and even if this Court were to apply the ABC test, I cannot plausibly find that Plaintiff was an employee of BCL based on the factual allegations. Allegations related to Plaintiff's employment classification amount to nothing more than a conclusory recitation of the ABC test elements. *See Baraka*, 481 F.3d at 195 (stating that courts are not required to accept as true "legal conclusion[s] couched as factual allegation[s]") (quotations omitted). Indeed, Plaintiff alleges that "Defendants exercised control over Mr. DiValerio's work,"

8

but neither the Amended Complaint nor the three agreements explain the method or manner in which Defendants purportedly controlled Plaintiff's sales activities. Am. Compl. ¶94. Further, considering the context of the parties' overall transaction, Plaintiff provides no explanation as to how, particularly since he was the plurality owner of BCL, Defendants supposedly exercised control over his work.

Plaintiff also alleges that he "performed work in the usual course of business" and "is not customarily engaged in an independently-established trade, occupation, profession or business." Am. Compl. ¶¶95, 96. This "threadbare recital" of the ABC test elements is woefully insufficient to allege Plaintiff is an employee. *Iqbal*, 556 U.S. at 678. In fact, the Independent Contractor Agreement implies that Plaintiff *does* perform a trade or occupation independent of BCL's business. According to the Agreement, BCL "engages in the business of providing laboratory services," and Plaintiff "possesses certain skills and experiences in marketing and selling services such as those provided by [BCL.]" Am. Compl. Ex. B. Plaintiff contracted to provide a service outside of BCL's usual business. Plaintiff did not provide laboratory services, but rather, marketed and sold BCL's services on the company's behalf. For these reasons, the Complaint fails to adequately plead that Plaintiff was an employee of BCL, such that Plaintiff can invoke the protections of the Wage Law. As such, Plaintiff has not alleged a Wage Law claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). That claim is dismissed.

9

### B. New Jersey Sales Representatives' Rights Act Claim[4]

Next, Defendants contend that Plaintiff has not sufficiently alleged an SRRA claim, because Plaintiff does not allege facts suggesting that Plaintiff actually "earned" over $100,000 in commissions. Def. Br. at 13. Defendants also maintain that Plaintiff failed to allege that he is a "sales representative," as defined by the SRRA. I disagree, and find that Plaintiff has stated a claim under the SRRA.

The SRRA provides that

> When a contract between a principal and a sales representative to solicit orders is terminated, the commissions and other compensation earned as a result of the representative relationship and unpaid shall become due and payable within 30 days of the date the contract is terminated or within 30 days of the date commissions are due, whichever is later.

N.J.S.A. § 2A:61A-2. The SRRA defines a "principal" as "a person . . . who manufactures, produces, imports or distributes a product or offers a service; contracts with an independent sales company or other person to solicit orders for the product or service; and compensates those companies or other persons who solicit orders, in whole or in part, by commission." N.J.S.A. § 2A:61A-1(b). A "sales representative" is a person "who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission but shall not include one who places orders or purchases exclusively for his own account for resale." N.J.S.A. § 2A:61A-1(c). And a "commission" is "compensation accruing to a sales representative for payment by a principal, . . . the rate of which is expressed as a percentage of the dollar amount of orders or sales or as a specified amount per order or per sale." N.J.S.A. § 2A:61A-1(d). Notably, a principal who

---

[4] Plaintiff's SRRA claim is pled in the alternative to his Wage Law claim "in the event it is determined that Mr. DiValerio is an independent contractor and not an employee." Am. Compl. ¶108. As such, Plaintiff pleads largely the same facts here as he does in his Wage Law claim.

violates the SRRA is liable for all amounts due, treble damages, and fees and costs. N.J.S.A. § 2A:61A-3.

Here, Plaintiff sufficiently alleges an SRRA claim. First, Plaintiff alleges that Defendants are principals as defined under the Act. Indeed, Defendants are engaged in the business of blood testing and contracted with Plaintiff to solicit orders for their blood testing services in exchange for commissions. Am. Compl. ¶¶6-9, 28, 30-31, 109, 111-113; Am. Compl. Ex. B. Plaintiff also alleges that he is a sales representative, as he contracted with Defendants, the principals, to solicit blood testing orders for commission. Am. Compl. ¶¶28, 30-31, 109-113; Am Compl. Ex. B. Furthermore, Plaintiff properly alleges that his compensation qualifies as commission under the SRRA, since the Independent Contractor Agreement specifies that Plaintiff was to receive commission rates of 25% for blood test sales and 50% for toxicology test sales. Am. Compl. Ex B. at 11. Finally, Plaintiff alleges that Defendants failed to pay Plaintiff over $100,000 in earned, but still unpaid, commissions pursuant to work performed under the Independent Contractor Agreement. Am. Compl. ¶¶113-118.

Nevertheless, Defendants argue that Plaintiff's allegations are insufficient because Plaintiff did not specify how he "earned" the over $100,000 in unpaid commissions. I disagree. At this early stage of the litigation, "Plaintiff is not required to prove his case or submit evidence[.]" *Azcona v. Ellis*, No. 20-8526, 2020 WL 5526701, at *1 (D.N.J. Sept. 15, 2020). Rather, Plaintiff's Complaint must comply with the liberal pleading standard of Fed. R. Civ. P. 8(a)(2), which provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Here, in light of this standard, and the fact that Plaintiff allegedly contracted with Defendants to solicit orders for commissions as part of the parties' larger business transaction, the Court infers that Plaintiff completed sales on

Defendants' behalf, and therefore, Plaintiff's allegation that he is owed over $100,000 in unpaid commissions is sufficient to rise "above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). As such, Plaintiff has stated a plausible claim for relief under the SRRA. Defendants' motion to dismiss Plaintiff's SRRA claim is denied.[5]

## IV. CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss is **GRANTED** as to the Wage Law claim (Count IV) and that claim is **DISMISSED**; and **DENIED** as to the SRRA claim (Count V).

---

[5] Defendants also assert that Plaintiff has not alleged facts that "Pendergraft, in her individual capacity," contracted with Plaintiff for services in exchange for commissions, and thus the SRRA claim must be dismissed as to Pendergraft. Def. Br. at 13. The Court has not found case law expressly stating whether corporate officers can, in addition to a company, meet the SRRA's definition of "principal." The Court did, however, find examples of corporate officers having been named as defendants to SRRA suits. *See Networld Communications, Corp. v. Croatia Airlines, D.D.*, No. 13-4770, 2014 WL 4662223 (D.N.J. Sept. 18, 2014) (granting motion to amend complaint after finding new SRRA claim against airline and airline employee not futile); *see also Berrada v. Cohen*, 792 Fed. Appx. 158 (3d Cir. 2019) (suing company and founder); *Meyers v. Heffernan*, No. 12-2434, 2016 WL 1611428 (D.N.J Apr. 22, 2016) (suing chief executive officer and executive vice president). As such, at this stage of the litigation, the Court will permit the claim to proceed against both Pendergraft and Talwar, as well as BCL. Separately, Defendant's assertion that the SRRA claim against Pendergraft "in her individual capacity" should be dismissed appears to be a reference to Plaintiff's attempt to pierce the corporate veil and bring his claims against Pendergraft and Talwar in their personal capacities. *See, e.g.*, Am. Compl. ¶¶13-19. Plaintiff's alter ego allegations are woefully insufficient as they are no more than threadbare recitations of the required elements to pierce the corporate veil. *Id.*; *see State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F.Supp.2d 668, 679 (D.N.J. 2009) ("In New Jersey, two elements must be shown to pierce the corporate veil: First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." (internal quotations and citations omitted)). Therefore, as the pleadings stand, if Plaintiff's SRRA claim is successful, Pendergaft and Talwar cannot be liable in their personal capacities, and liability would, ultimately, only accrue to the company. However, if during discovery, Plaintiff discovers additional evidence of alter ego, he may move to amend the Complaint before the Magistrate Judge.

Dated: January 7, 2022 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge